Caruthers, J.,
delivered the opinion of the Court.
This action of debt was brought by the defendant in error, against the plaintiffs in error, in the Circuit Court of Grainger county, on the following bill of exchange :
“ Grainger county, January 5th, 1854.
“Exchange for $1200.00.
“ Six months after date of this, my first of exchange, second of the same tenor and date unpaid, pay to the order of Thomas Waggoner, at the Bank of Hamburg,, in Hamburg, South Carolina, twelve hundred dollars, value received, and charge the same to account of “To John Cox, James A. Waggoner,
“ Bull Run P. O. " Haynes’ Post Office.”
It was accepted on the face. At, maturity it was regularly protested at the Bank of Hamburg, and returned to the Bank of Tennessee.
It is agreed that the drawer, acceptor and endorser, all live in the State of Tennessee, Grainger county, and that the drawing, acceptance and endorsement were all done there.
*142 The only question in the case, is, whether the Bank had a right to recover three per cent damages, in addition to the lawful interest. This depends upon the construction of the act of 1827, ch. 14, C. & N., 125. It is in these words:
“ Whenever any bill of exchange, to be drawn or endorsed within this State, upon any person or persons, or body corporate, of, or in any other State, territory or place, shall be returned unpaid with a legal protest, the person or persons to whom the same shall or may be payable, shall be entitled to recover and receive of and from the drawer or drawers, or the endorser or endorsers of such bill of exchange, the damages hereinafter specified, over and above the principal for which such bill of exchange shall have been drawn, and the charges of protest, together with lawful interest on the amount of such principal sum, damages and charges of protest, from the time at which notice of such protest shall have been given, and the payment of said principal sum and damages and charges of protest demanded; that is to say, if such bill shall have been drawn upon any person or persons, or body corporate, of, or in any of these United States, or the territories thereof, three per cent, on such principal sum.”
His Honor, the Circuit Judge, charged that it was a case embraced by the act, and allowed the damages of three per cent. Whether this was a proper construction of the act is the question now presented. We are not aware that the point has ever before been adjudicated by this Court. No reported case has been found upon the question. It is most f likely that it was the intention of the Legislature to embrace all *143 bills to be paid in another State, in contradistinction to those not so payable. It is difficult to conceive any good reason why a bill payable in another State, without regard to the residence of the acceptor, should not be placed upon the same footing with regard to damages in case of non-payment and protest. By the commercial law, as it stood before our act of 1827, and yet stands, when that act does not apply, damages were recoverable in addition- to interest for failure to meet and honor bills, without any fixed and arbitrary rule, but depending on the rates of exchange and re-exchange at the particular places. Story on Bills, chap. 11. This is only in case of foreign bills. Whether this be a foreign or inland bill, or if the former, what would be the measure or rule of damages, are questions that we need not consider or decide, as they are not involved in the case before us, which only requires a construction of our statute, made to fix a certain and definite rate of damages in a specified case. Much of the uncertainty and confusion in the law has resulted from the practice of departing in legal opinions from the point in judgment, and throwing out loose dicta upon kindred subjects. We would avoid that error by confining ourselves to the point on which the case turns. What is the case provided for in the act? “Where a bill is drawn or endorsed in this State upon any person of or in any other State:” It would seem without a change of this language, or its ordinary meaning, or supplying other words or ideas, that there is no room' for construction. The drawee is to be “of or in” some other State; a State different from the drawer or endorser. But here, the drawer, *144 drawee and endorser, all lived in this State, and the bill was drawn, endorsed and accepted in the county of Grainger. But the bill is made payable in the Bank of Hamburg, South Carolina, and the same reason and policy would dictate the allowance of damages in lieu of re-exchange, as if the drawee also resided there. That may be so, but the Legislature have not’ so considered it, and we cannot go in advance of it, so far as to change the meaning of the plainest words, or add other provisions to a statute. The Kentucky Statute of 1798, on the same subject, is, that, “ if any person or persons shall draw or endorse any bill of exchange upon any person out of this State,” &c., providing for damages in case of protest, &c. The construction given to this statute by the Court of Appeals, in the case of Clay vs. Hopkins, 3 Marsh. 488, was, that where the drawer and acceptor were both of Kentucky, and the transaction took place there, the statute did not apply, although the bill was made payable in Baltimore. The same court held, in 7 Monroe, 284, that if the acceptor be addressed at the foot of the bill, as of “New Orleans,” though in fact he was‘of Kentucky, the case would be different. These cases are referred to and adopted as the law of Kentucky, by the Supreme Court of the United States, in the case of the Bank of the United States vs. Daniels, et al., 12 Pet., 53. Independent, however, of any concurrent authority, we would feel constrained to give to our own act the construction indicated, as we think it susceptible of no other, without doing unauthorised violence to language, and perpetrating an act of judicial legislation.
It was then erroneous to allow the three per cent. *145 damages in this case under the statute, and for this error the judgment is reversed and a new trial awarded.